IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PHILLIP BACA,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social<br>Security Administration,<br><br>        Defendant. | Case No. 2:06-CV-449 TS<br><br><br>**REPORT AND RECOMMENDATION** |

Before the court is an action filed by Plaintiff, Phillip Baca, asking the court to reverse the final agency decision denying Plaintiff's applications for Disability Insurance Benefits (hereafter "DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-433. The Administrative Law Judge (hereafter "ALJ") found that Plaintiff was not disabled because Plaintiff was capable of making an adjustment to work that existed in significant numbers in the national economy.

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

Plaintiff now challenges the ALJ's decision by arguing that it is legally erroneous and not supported by substantial evidence.  Specifically, Plaintiff argues:  (1) the ALJ erred in failing to properly consider Plaintiff's treating physicians' opinions; (2) the ALJ erred in finding Plaintiff was not credible; and (3) the ALJ's assessment of Plaintiff's residual functional capacity (hereafter "RFC"), in which the ALJ found that Plaintiff could perform unskilled medium work with certain restrictions, was not supported by substantial evidence.

The court has carefully considered the parties' memoranda and the complete record in this matter and concludes that oral arguments would not materially assist it in the determination of this case.  Based on the analysis set forth below, the court recommends that Plaintiff's request that the court reverse and remand the ALJ's decision be granted.

## FACTUAL BACKGROUND

Plaintiff was born on December 5, 1947, so he was 54 years old as of his amended alleged onset date of January 25, 2002. (Docket Entry #9, The Certified Copy of the Transcript of the Entire Record of the Administrative Proceedings Relating to Phillip Baca (hereafter "Tr. __"), 18, 279.)  He worked as a miner from 1974 to 1996.  (Tr. 93.)  While at the mine, Plaintiff worked in several positions, including laborer, miner helper, shuttle car driver, surface laborer, beltman, and mason.  (Tr. 94.)  Plaintiff's earnings summary reveals that he had a steady

work history from 1965 to 1996, when he alleged in his DIB application that he first became disabled.  (Tr. 55, 58.)

Plaintiff's medical records show that he was treated by Dr. Heiner for various orthopedic problems since 1984.  (Tr. 158.) Plaintiff began reporting neck and back pain in 1995.  (Tr. 330.) At that time he was found to have a congenitally narrow spine with a concentric disc bulge and neural foraminal narrowing. (Tr. 330.)  Plaintiff underwent conservative treatment but continued to have significant pain.  (Tr. 326.)  At the same time, Plaintiff was having considerable low back pain.  (Tr. 328.)  An MRI done on October 12, 1995, showed minor spondylosis with minor concentric disc bulge and arthrosis at L4-5.  (Tr. 295-96.)  In February of 2002, Dr. Heiner prepared a summary describing his care of Plaintiff since 1984.  (Tr. 235.)  This summary described interventions for, among other problems, hand injuries, carpal tunnel syndrome, neck pain, and low back pain. (Tr. 235-37.)  In a later evaluation, Dr. Heiner stated that these conditions had progressively become worse.  (Tr. 158.)

A July 2003 MRI of Plaintiff's lumbar spine revealed moderate central disk protrusion of L4-5 causing moderately severe spinal stenosis, mild bulges at L3-4 and L5-S1 without focal neurologic encroachment, and modest facet hypertrophy bilaterally at L4-5, and to a mild degree at L5-S1.  (Tr. 168-69.)  An MRI performed on August 6, 2004, revealed hard and soft disc herniation encroachment on both neural foramina.  (Tr. 203.)

Plaintiff underwent a spinal fusion in November 2004.  (Tr. 226.)
Unfortunately, this fusion did not significantly reduce his pain.
(Tr. 250.)

In addition to Plaintiff's neck and back problems, Plaintiff
had problems with his wrists, knees, elbows, and hearing.  A July
7, 2003 MRI revealed that he had diffuse erosive arthritis
throughout his left wrist.  (Tr. 170.)  An x-ray of his right
wrist showed a suspicion of previous non-union scaphoid fracture
with arthritis throughout the wrist.  (Tr. 191.)  On September
15, 2003, Plaintiff underwent a right wrist fusion.  (Tr. 189.)
A November 20, 2003 office visit revealed that Plaintiff's range
of motion in his right wrist was a little stiff, but with full
extension of his fingers and thumb.  (Tr. 305.)  EMG studies in
September 2004, showed that Plaintiff continued to suffer from
carpal tunnel and possible nerve entrapment in the elbows.  (Tr.
201.)

On August 10, 2003, Plaintiff was admitted to the hospital
for diagnostic knee surgery.  (Tr. 173.)  Plaintiff stated at
this time that he was falling down a lot because his knee was
buckling and giving way.  (Tr. 173.)  The surgery revealed a
partial meniscus tear with diffuse degenerative changes in his
right knee.  (Tr. 176.)  However, Plaintiff continued to have
knee pain that affected his ability to walk.  (Tr. 305.)

In August 1997, Plaintiff had testing that established a
significant hearing loss related to his work in the mines.  (Tr.

4

219.)   Testing in November 2003 revealed similar results with a
90 db loss at 8000 MHz.  (Tr. 216.)   The examiner stated that
Plaintiff's ability to hear in an active environment was severely
limited and that it would be best to have instructions given one-
on-one in a quiet place and then repeated to make sure they were
understood.  (Tr. 216.)   The same results and recommendations
were again given in June 2004.  (Tr. 214.)

In addition to these physical problems, Plaintiff has
experienced depression.  (Tr. 284.)   Plaintiff was first taken
off work because of his depression in 1997.  (Tr. 281.)   At the
time, it was felt that he would have to remain off work
indefinitely barring some change in his clinical status.  (Tr.
281.)   Medical notes in 2003 indicate that Plaintiff continued to
suffer from major depression.  (Tr. 211.)   Plaintiff was noted to
be quite depressed largely due to his inability to be productive
as he had been in the past.  (Tr. 210-11.)

Other than the medical records and opinions of Plaintiff's
two treating physicians and treating physical therapist regarding
Plaintiff's exertional capabilities (Tr. 158-66, 262-64), the
only medical source evaluation of Plaintiff's specific functional
limitations came from a non-treating source, a physician who
evaluated Plaintiff for possible black lung compensation (Tr.
122-24).  This physician found that Plaintiff did not have any
impairment of his lungs and did not have any indication of
pneumoconiosis.  (Tr. 123-24.)   The administrative record

5

contains no state agency physician opinions concerning Plaintiff's specific physical or mental limitations.

At the March 23, 2005 hearing before the ALJ, Plaintiff and Dina Galli, a vocational expert (hereafter "VE"), testified. (Tr. 351.)  Plaintiff testified regarding his physical problems, and the VE testified regarding the five hypotheticals given to her by the ALJ.  (Tr. 360-85, 385-93.)

### PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 11, 2003, alleging an inability to work since January 25, 2002, due to problems with his neck, lower back, right leg, cramping in his hands, dizzy spells, and problems with his hearing.  (Tr. 58-61, 87, 352-53.) His application was denied initially (Tr. 41-43) and upon reconsideration (Tr. 36-38).  After a hearing before the ALJ on March 23, 2005 (Tr. 350-94), the ALJ issued a decision on July 15, 2005, finding that Plaintiff was not disabled because he retained the RFC to perform a significant number of jobs.  (Tr. 18-29.)  On May 2, 2006, the Appeals Council declined to review the ALJ's determination (Tr. 6-8), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

On June 6, 2006, after receiving the Appeals Council's denial of his request for review, Plaintiff filed his complaint and the case was assigned to United States District Judge Ted Stewart.  (File Entry #3.)  Defendant filed her answer and the

administrative record on August 3, 2006.  (File Entries #5, 9.)
Plaintiff filed his brief on October 20, 2006 (File Entry #10),
Defendant filed his brief on November 27, 2006 (File Entry #11),
and Plaintiff filed his response brief on December 27, 2006 (File
Entry #14).

On July 28, 2006, Judge Stewart referred the case to United
States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. §
636(b)(1)(B).  (File Entry #4.)

### THE FIVE-STEP DISABILITY EVALUATION

The Social Security Act defines "disability" as the
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Further, an
individual shall be determined disabled "only if his physical or
mental impairment or impairments are of such severity that he is
not only unable to do his previous work but cannot, considering
his age, education, and work experience, engage in any other kind
of substantial gainful work which exists in the national
economy."  *Id.* § 423(d)(2)(A).

A person seeking Social Security benefits bears the burden
of proving that because of his disability, he is unable to
perform his prior work activity.  *See Andrade v. Secretary of
Health and Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993);

*Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10ᵗʰ Cir. 1992);
*Gossett v. Bowen*, 862 F.2d 802, 804 (10ᵗʰ Cir. 1988).  Once the
claimant establishes that he has such a disability, the burden
shifts to the Commissioner to prove that the claimant retains the
ability to do other work and that jobs which he can perform exist
in the national economy.  *See Lax v. Astrue*, 489 F.3d 1080, 1084
(10ᵗʰ Cir. 2007).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
*See* 20 C.F.R. § 404.1520.  "'[I]f a determination can be made at
any of the steps that a claimant is or is not disabled,
evaluation under a subsequent step is not necessary.'"  *Lax*, 489
F.3d at 1084 (quoting *Williams* v. Bowen, 844 F.2d 748, 750 (10ᵗʰ
Cir. 1988)).

Step one of the evaluation process provides that a claimant
who is working is not disabled, regardless of that person's
medical condition, age, education and work experience, if it is
determined that the work constitutes "substantial gainful
activity."  20 C.F.R. § 404.1520(b); *accord Lax*, 489 F.3d at
1084.  If the claimant is not engaged in substantial gainful
activity, then the decision maker must proceed to step two to
determine whether the claimant has an impairment or combination
of impairments severe enough to limit his ability to do basic
work activities.  *See* 20 C.F.R. § 404.1520(c).  A determination

of this issue is based on medical factors alone.  *See Williams*, 844 F.2d at 751.

A finding of a severe impairment leads the decision maker to step three to determine whether the claimant's impairment meets the durational requirement and is listed in Appendix 1 of Subpart P, 20 C.F.R. § 404, or is equal to a listed impairment.  *See* 20 C.F.R. § 404.1520(d).  If the claimant's impairment, or the equivalent thereof, is listed, the claimant is presumed to be disabled.  *See id.* §§ 404.1520(d).  If the impairment is not listed, the decision maker proceeds to step four.  At this level, the decision maker looks at past relevant work performed by the claimant.  If the claimant is able to perform work he has done in the past, he is not disabled.  *See id.* § 404.1520(e), (f).

Fifth, if the claimant is unable to perform past relevant work, the decision maker completes the evaluation by turning to step five.  At this step, where the claimant's impairment is so severe that it precludes him from performing work he has done in the past, he is deemed disabled unless it can be established that "the claimant retains the capacity 'to perform an alternative work activity and that this specific type of job exists in the national economy.'"  *Williams*, 844 F.2d at 751 (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)); *see also* 20 C.F.R. § 404.1520(g).

Having examined the five-step process decision makers follow in evaluating whether an applicant is entitled to DIB and SSI, the court next examines the ALJ's decision in this case.

## THE ALJ'S DECISION

Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision in this case. *See* 42 U.S.C. § 405(g).  Therefore, the court examines the ALJ's decision.

The ALJ followed the five-step analysis in reaching his decision.  First, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since his alleged onset date. (Tr. 19.)  Second, the ALJ found that Plaintiff had been diagnosed and treated for severe impairments from the alleged onset date to the date of the ALJ's decision for a period of twelve continuous months or more.  (Tr. 19-23.)  Third, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment.  (Tr. 24.)

Fourth, the ALJ found that Plaintiff did not retain the RFC to perform his past relevant work.  (Tr. 26.)  However, in the final step of his analysis, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy, and that Plaintiff, therefore, is not disabled.  (Tr. 27.)

Specifically, the ALJ made the following findings:

10

1.   The claimant met the disability insured status requirements of the Act on January 25, 2002, the date the claimant alleged an inability to work, and continued to meet them through December 31, 2002.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability as noted above.

3.   The claimant alleges the severe impairments noted above, which are incorporated herein by reference.

4.   Prior to December 31, 2002, the claimant did have severe impairments, which significantly limit his ability to perform basic work-related activities, as set forth in detail above.

5.   The exhibits and testimony do not establish that a listing was met or equaled prior to December 31, 2002.

6.   The ALJ has determined the claimant's credibility regarding symptom testimony as set forth in detail above in the body of the decision.  Such credibility findings are incorporated herein by reference.  It is concluded that prior to December 31, 2002 the claimant's impairments and symptoms do not preclude the occupations suggested by the vocational expert.

7.   The claimant suffered from severe impairments prior to December 31, 2002, which reduced his residual functional capacity to the performance of only medium unskilled work with the limitations as set forth in detail in the body of the decision.

8.   The claimant in unable to perform any past relevant work, for the reasons detailed above.

9.   During the period at issue the claimant was 54-57 years of age, which is defined as an individual "closely approaching advanced age" and an individual of "advanced age".

10.  The claimant has a ninth grade education.

11.  Work skills are not at issue in this matter.

12.  Considering these vocational factors and the claimant's residual functional capacity, Medical-Vocational Rules 203.12 and 203.19 provide the framework for a finding of "not disabled."  Within this framework the claimant could perform a significant number of jobs, in the national economy, in the various occupations cited by the vocational expert, as set forth in detail above.

13.  The claimant has not been under a "disability," as defined in the Social Security Act, at any time prior to December 31, 2002.

(Tr. 27-28.)

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether correct legal standards were applied."  *Lax*, 489 F.3d at 1084; *accord Pisciotta v. Astrue*, 218 Fed. Appx. 765, 766 (10th Cir. 2007).

The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Lax*,

489 F.3d at 1084 (citation omitted).  Substantial evidence

"requires more than a scintilla, but less than a preponderance,"

*id.*, and "'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion,'" *Pisciotta*, 218 Fed.

Appx. at 767 (citation omitted).  "'Evidence is not substantial

"if it is overwhelmed by other evidence--particularly certain

types of evidence (e.g., that offered by treating physicians)--or

if it really constitutes not evidence but mere conclusion."'"

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citations

omitted); *see also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.

1994) ("Evidence is insubstantial if it is overwhelmingly

contradicted by other evidence."); *Trimiar v. Sullivan*, 966 F.2d

1326, 1329 (10th Cir. 1992) ("A finding of '"no substantial

evidence" will be found only where there is a "conspicuous

absence of credible choices" or "no contrary medical evidence."'"

(Citations omitted.)).

In conducting its review, the court "must examine the record

closely to determine whether substantial evidence supports" the

Commissioner's decision.  *Winfrey v. Chater*, 92 F.3d 1017, 1019

(10th Cir. 1996).  Although the court considers "'whether the ALJ

followed the "specific rules of law that must be followed in

weighing particular types of evidence in disability cases," [it]

will not reweigh the evidence or substitute [its] judgment for

the Commissioner's.'"  *Lax,* 489 F.3d at 1084 (citations omitted).

However, the court is not required to mechanically accept the

Commissioner's findings.  *See Ehrhart v. Secretary of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992) ("By the same token, we must do more than merely rubber stamp the decisions of the [Commissioner].").  Rather, the court must "'examine the record as a whole, including whatever in the record fairly detracts from the weight of the . . . [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met.'"  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).  The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Id.*

The court typically defers to the ALJ on issues of witness credibility.  *See Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992).  Nonetheless, "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence.'"  *Winfrey*, 92 F.3d at 1020 (citation omitted).

The court's review also extends to determining whether the Commissioner applied the correct legal standards.  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Besides the lack of

14

substantial evidence, reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff asserts three major arguments. First, Plaintiff argues the ALJ erred in failing to properly consider Plaintiff's treating physicians' opinions. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff argues the ALJ's RFC determination that Plaintiff is capable of performing unskilled medium work was not supported by substantial evidence. The court addresses each of these arguments seriatim.

## A.  Treating Physicians' Opinions

First, Plaintiff argues that the ALJ rejected or completely ignored Plaintiff's treating physicians' opinions without an adequate explanation.

When evaluating a treating physician's opinion, the ALJ must follow a sequential analysis. In the first step of the analysis, the ALJ should consider whether the opinion is both "(1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques;' and (2) 'consistent with other substantial evidence in the record.'" *Victory v. Barnhart*, 121

15

Fed. Appx. 819, 822 (10th Cir. 2005) (quoting *Watkins v. Barnhart*,
350 F.3d 1297, 1300 (10th Cir. 2003)); *see also* 20 C.F.R. §
404.1527(d)(2).  If the answer to both of these questions is yes,
the ALJ must give the treating physician's opinion controlling
weight.  *See Watkins*, 350 F.3d at 1300.  However, if the treating
physician's opinion is deficient in either of these respects,
then it is not entitled to controlling weight.  *See id.*

Social Security Ruling 96-2p provides that even if a
treating physician's opinion is not entitled to controlling
weight, the treating physician's medical opinions are still
entitled to deference and must be weighed using all the factors
provided in 20 C.F.R. § 404.1527.  *See* SSR 96-2p, 1996 WL 374188,
at *4.  Those six factors are:

> (1) the length of the treatment relationship
> and the frequency of examination; (2) the
> nature and extent of the treatment
> relationship, including the treatment
> provided and the kind of examination or
> testing performed; (3) the degree to which
> the physician's opinion is supported by
> relevant evidence; (4) consistency between
> the opinion and the record as a whole; (5)
> whether or not the physician is a specialist
> in the area upon which an opinion is
> rendered; and (6) other factors brought to
> the ALJ's attention which tend to support or
> contradict the opinion.

*Watkins*, 350 F.3d at 1300; *see also* 20 C.F.R. § 404.1527.  After
considering these factors, "the ALJ must give good reasons in
[the] . . . decision for the weight he ultimately assigns the
opinion."  *Watkins*, 350 F.3d at 1301 (quotation omitted).

16

"Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (quotations omitted).

Turning to the instant case, Plaintiff argues that his three treating physicians' opinions were erroneously rejected or ignored. Those three opinions were given by Dr. Heiner, Dr. Gagon, and Mr. Powell.

The court first examines how the ALJ treated Dr. Heiner's opinion. Dr. Heiner filled out an RFC questionnaire on September 28, 2004. (Tr. 158-59.) In addressing Dr. Heiner's history with Plaintiff, the ALJ set forth in some detail Plaintiff's visits to Dr. Heiner, as well as Dr. Heiner's findings and opinions of those visits, in Step Two of the ALJ's opinion. (Tr. 20-23.) Then, at Step Four of his opinion, the ALJ stated,

> The ALJ has also carefully considered the opinion of Dr. Heiner that the claimant has been disabled since March 1996 and finds this opinion is inconsistent with the objective clinical and laboratory findings of record, including his own examinations of the claimant prior to December 31, 2002. . . . While the ALJ accepts the opinion of Dr. Heiner with regard to the medical issues relating to the nature and severity of the claimant's impairments, the opinion as to the claimant's residual functional capacity, the ability to work and whether there is a "disability" under the Social Security Act are issues reserved to the Commissioner.

(Tr. 25.) Therefore, in following the required sequential analysis of evaluating a treating physician's opinion, the ALJ concluded that Dr. Heiner's opinion did not meet the second

17

requirement of the first part of the analysis, because Dr.
Heiner's opinion that Plaintiff has been disabled since March
1996 was not "'consistent with other substantial evidence in the
record.'" *Victory*, 121 Fed. Appx. at 822 (citation omitted).
The ALJ supported this assessment by stating,

> Specifically, [Dr. Heiner's] examination of
> the claimant in 1997 indicates sensation,
> strength and reflexes were normal in the
> lower extremities.  He had full rotation,
> flexion and extension in the neck and
> sensation, motor and reflex testing in the
> upper extremities was normal.  The record
> indicates he did not see the claimant again
> until February 2002, when he only indicated
> that the claimant's neck and back pain were
> work related.  Physical and/or neurological
> examinations were not performed at that time.
> The claimant was not seen again by Dr. Heiner
> until June 2003, after the date last insured.

(Tr. 25.)  Therefore, in determining that Dr. Heiner's opinion
was not consistent with other substantial evidence in the record,
the ALJ set forth Dr. Heiner's findings from a 1997 examination
and a 2002 visit, other evidence the ALJ apparently believed was
inconsistent with Dr. Heiner's opinion.

The court has reviewed Dr. Heiner's medical records from
2002, which was the relevant time period in this case.  All the
administrative record contains from this time is a two page
report from Dr. Heiner explaining Plaintiff's history of back and
neck problems.  (Tr. 235-37.)  Dr. Heiner explained that
Plaintiff presented at his February 26, 2002 visit with the same
symptoms he presented with in 1995; thus, it is possible that

18

Plaintiff's back and neck pain persisted throughout the years. (Tr. 236.)  Dr. Heiner explained that the reason Plaintiff had not followed up since 1995 is because Plaintiff lacked medical insurance and could not afford to pay for medical care, and that the reason Plaintiff had made the appointment to see Dr. Heiner was because Plaintiff had been told that he was being awarded Social Security benefits.  Dr. Heiner explained that Plaintiff's Social Security benefits were short-lived, and that by the time Plaintiff came in for his office visit, they had been revoked. (Tr. 235.)  The ALJ's remark appears correct that Dr. Heiner's office note from 2002 shows no evidence that Dr. Heiner actually examined Plaintiff in 2002.

However, although the ALJ explained that he found Dr. Heiner's determination that Plaintiff was disabled inconsistent with the medical record, the ALJ did not explain what weight he was giving to Dr. Heiner's assessments and opinions.  As discussed above, even if the ALJ does not find that a treating physician's opinion is entitled to controlling weight, he must still determine what weight the opinion receives according to the factors in the regulations.  If the ALJ fails to explain what weight is given to the treating physician's opinion, as well as the reason for giving that weight, the reviewing court cannot provide a meaningful review of the ALJ's decision.  *Hamlin*, 365 F.3d at 1215.

The only statement the ALJ provided regarding the weight he was giving Dr. Heiner's opinion is that he accepted the opinion regarding the medical issues relating to the nature and severity of Plaintiff's impairments, but that the ALJ did not accept Dr. Heiner's opinion regarding Plaintiff's RFC, Plaintiff's ability to work, and whether Plaintiff was "disabled," all issues the ALJ deemed as reserved for the Commissioner.  This statement raises several issues.

First, it is well established that the ultimate issue of disability is reserved to the Commissioner.  *See Whelchel v. Barnhart*, 94 Fed. Appx. 703, 709 (10th Cir. 2004) (*citing Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); SSR 96-5p, 1996 WL 374183, at *2).  Therefore, the court concludes that the ALJ's rejection of Dr. Heiner's specific assessment regarding whether Plaintiff was "disabled" was not erroneous.

Second, it is also established that the Commissioner determines a claimant's RFC.  *See* 20 C.F.R. § 404.1546(c) (stating that ALJ is responsible for assessing a claimant's RFC); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (stating it is the Commissioner's responsibility to assess a claimant's RFC); SSR 96-5p, 1996 WL 374183, at *2.  However, it was erroneous for the ALJ to simply dismiss the information Dr. Heiner provided in the RFC questionnaire based on the reasoning that the RFC is left only to the Commissioner.

Social Security Ruling 96-5p explains that although "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance," they "must never be ignored, and . . . the notice of the determination or decision must explain the consideration give to the treating source's opinion." 1996 WL 374183, at *1. Further, SSR 96-5p explains that although an individual's RFC is a determination reserved to and made by the Commissioner, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." 1996 WL 374183, at *2.

Although the form filled out by Dr. Heiner is entitled "Residual Functional Capacity Questionnaire," it more accurately should be called a "medical source statement," as described by SSR 96-5p. *See* 1996 WL 374183, at *4. Dr. Heiner's statement supplies a diagnosis, prognosis, and describes Plaintiff's symptoms. His statement also supplies clinical findings, and makes such evaluations as whether the impairments could be expected to last for at least 12 months, whether Plaintiff's medications could cause side effects and what those are, how long Plaintiff could sit and stand at a time, and so on. (Tr. 158-59.) Such information falls squarely in what has been defined as a medical source statement. *See* SSR 96-5p, 1996 WL 374183, at *4. Furthermore, Tenth Circuit case law is replete with cases in which the court has required that the ALJ give specific and

sufficient explanations for rejecting those medical source
statements.  *See, e.g., Sandoval v. Barnhart*, 197 Fed. Appx. 801,
806 (10th Cir. 2006); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th
Cir. 2004); *see also Romero v. Astrue*, 2007 WL 2110899, at *2
(10th Cir. 2007); *Confere v. Astrue*, 2007 WL 119650, at *2 (10th
Cir. 2007); *Gilbert v. Astrue*, 2007 WL 1068104, at *2-4 (10th Cir.
2007); *Maynard v. Astrue*, 2007 WL 495310, at *2-3 (10th Cir.
2007).  The ALJ's reason for rejecting Dr. Heiner's medical
source statement--because the RFC determination is reserved for
the Commissioner to make--was an inadequate explanation for a
blanket rejection of the functional assessments made by Dr.
Heiner.  The ALJ was required to explain what weight was given to
Dr. Heiner's medical source statement and why.  Further, if the
ALJ completely rejected the medical source statement, the ALJ was
required to set forth what medical evidence conflicted with the
statement.  The ALJ did not meet these requirements.  Therefore,
because Dr. Heiner's medical source statement conflicts with the
ALJ's functional assessment, and because the ALJ did not properly
explain the weight he gave Dr. Heiner's statement and why that
weight was given, this case must be remanded so the ALJ can
properly evaluate Dr. Heiner's assessment of Plaintiff's
functional abilities.

     Third, the court is unclear what the ALJ meant when he wrote
that "he did accept Dr. Heiner's opinion regarding the medical
issues relating to the nature and severity of Plaintiff's

impairments." (Tr. 25.) The "medical issues relating to the nature and severity of Plaintiff's impairments" could refer to many things, and, after carefully reviewing the ALJ's decision, the court is unable to determine exactly what the ALJ accepted regarding Dr. Heiner's opinion. Therefore, as explained above, the court directs the ALJ, on remand, to clearly articulate findings indicating specifically what is being accepted and rejected as to Dr. Heiner's opinion and why. The court notes that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Finally, the court also notes that it is aware that Dr. Heiner's medical source statement was made in September 2004, after Plaintiff's insured status had expired. Tenth Circuit case law indicates that not evaluating medical record evidence from after the relevant time period generally is not error. *See Salazar v. Astrue*, 224 Fed. Appx. 839, 841 (10th Cir. 2007) (affirming district court's determination that Appeals Council did not err in rejecting new evidence because it occurred more than two months after the relevant time period ended in the case). However, no other medical assessment of Plaintiff's functional abilities exists in the record other than those made by Dr. Heiner, Dr. Gagon, and Mr. Powell. These three treated and examined Plaintiff on a regular basis and, from those

23

examinations, were familiar with Plaintiff's physical and mental limitations.  The ALJ did not obtain a medical advisor opinion or any other such expertise to determine Plaintiff's RFC during the relevant time period in this case.  *See generally Blea v. Barnhart*, 466 F.3d 903, 911-13 (10th Cir. 2006) (holding a medical advisor opinion is required by SSR 83-20 where medical evidence of onset was ambiguous, the record was silent, and a retroactive inference was necessary).  Without these assessments, the record completely lacks any sort of detailed assessment upon which to base an RFC determination.  As a result, on remand, if the ALJ rejects these assessments, the ALJ must indicate upon what record evidence he is basing his RFC determination.  It may be necessary to supplement the record with additional information.

The court next turns to the ALJ's treatment of Dr. Gagon. In Step Two of his analysis, in reciting the medical evidence of record, the ALJ set forth Plaintiff's history with Dr. Gagon. (Tr. 21, 23.)   However, at Step Four of his analysis, in which the ALJ made credibility findings and assessed Plaintiff's RFC, the ALJ did not even mention Dr. Gagon.  Furthermore, the ALJ's RFC assessment conflicts with Dr. Gagon's October 12, 2004 medical source statement.[2]  (Tr. 163-65.)

---

[2]Again, as with Dr. Heiner's statement, although Dr. Gagon's statement is called on paper a residual functional capacity assessment, it more accurately should be considered a medical source statement.

The court could speculate as to how the ALJ assessed Dr. Gagon's analysis; however, such speculation is not allowed. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) ("Claimant also correctly argues that the magistrate judge erred in upholding the treating physician's opinion.  The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("The district court (adopting the magistrate judge's findings and recommendations) effectively conceded that the administrative law judge (ALJ) erred in his analysis, but upheld the denial of benefits nonetheless by relying upon certain analytical revisions offered on judicial review.  Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.")

Further, the Tenth Circuit has explained that "the ALJ's determination regarding the weight assigned to a treating physician's opinion '"must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."'" *Roybal v. Astrue*, 224 Fed. Appx. 843, 847 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5)).  Because the ALJ did not even mention Dr. Gagon in making his credibility findings and assessing Plaintiff's RFC, and because the ALJ's RFC assessment conflicts

25

with the RFC assessment made by Dr. Gagon, on remand the ALJ must articulate specific findings and his reasons for discounting Dr. Gagon's functional assessment of Plaintiff.  *See Ledford v. Barnhart*, 197 Fed. Appx. 808, 811-12 (10th Cir. 2006).

Finally, the court examines how the ALJ treated Brian Powell's opinion.  The ALJ stated, "The ALJ has considered the March 8, 2005 opinion of Brian Powell (Exhibit B-16F) that the claimant has essentially been disabled since 1995 and gives it little, if any, weight, as his treatment of the claimant started on February 8, 2005, long after the date last insured."  (Tr. 25.)  As explained above, Plaintiff's relevant time period ended in December 2002.  Therefore, as the ALJ noted, Mr. Powell's treatment of Plaintiff fell outside the relevant time period. However, as explained above, no specific assessment of Plaintiff's functional limitations exists in the record other than those submitted by Mr. Powell, Dr. Gagon, and Dr. Heiner. Nevertheless, the ALJ did not err in finding Mr. Powell's treatment of Plaintiff fell outside the relevant time period.

The court also notes that Brian Powell is a physical therapist, not a medical doctor.  As a result, he is not an acceptable medical source to be a "treating source."  *See Zumwalt v. Astrue*, 220 Fed. Appx. 770, 779 (10th Cir. 2007) (citing 20 C.F.R. § 404.1502).  "An 'acceptable medical source' is (1) a licensed physician; (2) a licensed or certified psychologist; (3) a licensed optometrist, for certain purposes; (4) a licensed

podiatrist, for certain purposes; and (5) a qualified speech-language pathologist, for certain purposes." *Zumwalt*, 220 Fed. Appx. at 779 (citing 20 C.F.R. § 404.1513(a)(1-5)). Because Brian Powell, as a physical therapist, does not fall within the definition of an acceptable medical source, the ALJ was not required to give his opinion controlling weight. *See* SSR 06-03p, 2006 WL 2329939, at *2. Nevertheless, Mr. Powell is an "other source," as defined by Social Security Ruling 06-03p, and information provided by him "may be based on special knowledge of [Plaintiff] and may provide insight into the severity of [Plaintiff's] impairment(s) and how it affects [Plaintiff's] ability to function." *Id.*

In summary, the court concludes that the ALJ failed to adequately articulate acceptable reasons for his treatment of Dr. Heiner's assessment of Plaintiff's functional abilities, requiring that this case be remanded. In addition, the court concludes that the ALJ wholly failed to articulate reasons for his treatment of Dr. Gagon's assessment of Plaintiff's functional abilities, as Dr. Gagon is not even mentioned in the ALJ's credibility and RFC assessments. Thus, the case must also be remanded for the ALJ to articulate his treatment of Dr. Gagon's opinion. Third, the ALJ did not err in his treatment of Brian Powell's opinion because Mr. Powell did not begin treating Plaintiff until 2005.

## B.  Credibility Assessment

Second, Plaintiff challenges the ALJ's credibility assessment of Plaintiff's testimony.  The ALJ set forth Plaintiff's testimony as follows:

> The claimant testified he has not worked in 1996 because of neck and back pain, dizzy spells and because his hands lock up.  He said he was having problems with his neck in 2002 and was using pain medication.  He stated that when his back hurts he gets a headache which goes into his neck.  He said that during 2002 he also experienced cramps in his arms and hands.  He had swelling in his right hand and his left hand was starting to get bad.  He said his hands lock up when he plays computer games.  He testified the bones in his wrist were broken prior to 2003 and he had a right wrist fusion.  He cannot bend his right wrist forward or backward.  He said he has low back pain and stiffness in his legs and his legs fall asleep and his right hand falls asleep.  He said he had problems with his knees in 2002 and continues to have knee problems and may need knee replacement surgery.  The claimant further testified he cannot sleep all night because of his back problem.  He uses a cane.  He said he can only go up 5 steps at a time while using the hand rail.

(Tr. 24.)  The ALJ then assessed Plaintiff's credibility as follows:

> The ALJ has carefully considered all the evidence in this case and finds that prior to December 31, 2002, the medical record does not support the claimant's subjective complaints, functional limitations and disabling pain to the degree alleged.  X-rays in 1998 showed some degenerative changes at C5-6 and L3-5; however, there is no evidence of any significant neurological deficits, muscle wasting or weakness prior to December 21, 2002.  The claimant had a remote wrist

28

> injury and carpal tunnel release on the right
> in 1994 but examination by Dr. Heiner in
> September 1997 showed sensation, motor and
> reflex testing in the upper extremities was
> normal.  Work-up for the claimant's
> complaints of dizziness was negative,
> reflexes were equal, sensation was complete
> and cerebellar function was normal.  Prior to
> December 21, 2002, the claimant did have a
> sensorineural hearing loss.  The limitations
> stemming from this condition have been
> incorporated [in] the residual functional
> capacity below.  The claimant also has
> diabetes, however, the record shows this
> condition is controlled with medication and
> there is no evidence of any end organ damage.
> The record also shows the claimant was
> diagnosed with depression and anxiety;
> however, there is no evidence of any
> significant thought disorder, cognitive
> limitations or memory deficits that would
> have prevented the claimant from
> understanding, remembering and carrying out
> simple instructions prior to the date last
> insured.

(Tr. 25.)

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  While the ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints, and explain why if he concludes those complaints are not credible, *see id.*, this process "does not require a formalistic factor-by-factor recitation of the evidence," *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  "So long as the ALJ sets forth the specific

evidence he relies on in evaluating the claimant's credibility, [the procedural requisites] are satisfied." *Id.*

As set forth above, the ALJ recited the specific evidence upon which he relied in evaluating claimant's credibility.  The court concludes that the evidence recited by the ALJ sets forth substantial evidence supporting the ALJ's credibility finding.  As a result, the court rejects Plaintiff's credibility challenge.

## C.  RFC Assessment

Third, Plaintiff argues that the ALJ's RFC determination that Plaintiff could perform medium unskilled work with certain specified limitations was not supported by substantial evidence. Plaintiff argues that the ALJ ignored the VE's testimony that limitations on significant bending, stooping, and squatting would not allow for any medium work; that the ALJ failed to properly address the treating source opinions regarding Plaintiff's RFC; and that the ALJ failed to support his RFC assessment with any references to the medical record.

The court first examines the VE's testimony.  The ALJ asked the VE:

> Q    . . . For example, I'm just wondering if
>       there were medium jobs that did not
>       require more of the bending, stooping,
>       and squatting, the overhead lifting or
>       reaching, the stair climbing, the work
>       on the floor.
> A    Right, right.
> Q    And any more than frequent reaching,
>       handling and fingering.
> A    [INAUDIBLE FOR 19 SECONDS] No, I don't
>       believe that there would be.

30

```
Q    So, I'm thinking, for example, of a
     cannery worker or a janitor, would those
     jobs require more than this hypothetical
     allowed for?
A    Yes, I was looking through my lists of
     medium, unskilled jobs and I think with
     the no bending, stooping and squatting
     and the preclusion of working around
     machinery and heights and chemicals,
     those are the sorts of environments that
     medium work [is] typically performed in.
Q    So let's then, eliminate the limitations
     with regards to the dangerous work
     areas.  And also the bending, stooping
     and squatting.
A    Okay.
Q    Would that provide for any jobs?
A    Yes.
Q    What jobs com[e] to mind?
A    Those types of jobs would be laundry
     worker I, its DOT 361.684-014, it's
     medium unskilled work.  There are
     approximately 50,000 in the national
     economy.  Another example would be
     cleaner II, DOT 919.687-014, there are
     approximately 50,000 in the national
     economy.
Q    Would you reduce those for this fifth
     hypothetical?  Or sixth hypothetical
     actually.
A    Well, I'd reduce them about 25 percent,
     that's in the ways of stair climbing
     things like that.
Q    Twenty-five percent?
A    Yes.
Q    Now, has your testimony departed off
     from the DOT and SCO in terms of the
     reaching, handling, and fingering and
     also the sit/stand option?
A    No.
Q    So, giving the reductions?
A    Giving the reductions there's no
     difference.
```

(Tr. 389-91.)  This exchange is significant because the ALJ's RFC

determination included that Plaintiff could "perform the full

range of medium unskilled work, **except that such work could not**

31

**require**:  stooping, bending or squatting of significance; and, working around dangerous unprotected heights, machinery or chemicals. . . .”  (Tr. 26.)  Yet, at step five, the ALJ stated that the VE said that Plaintiff could perform the two jobs of Laundry Worker I, D.O.T. #361.684-014, medium unskilled work; and Cleaner II, D.O.T. #919.687-014, medium unskilled work. Obviously, as set forth in the VE’s testimony, these two jobs of laundry worker and cleaner were not ones that the VE testified Plaintiff could perform if he could not stoop, bend, and squat and work around dangerous unprotected heights, machinery, or chemicals.  In fact, the VE testified that those two restrictions, which the ALJ specifically found Plaintiff could not do, would preclude Plaintiff from any unskilled medium work jobs.  As a result, the court agrees with Plaintiff that the ALJ inaccurately portrayed the VE’s testimony and that the VE’s testimony actually was that the RFC determination made by the ALJ would preclude Plaintiff from being able to perform any medium unskilled work.

Second, the court addresses Plaintiff’s argument that the ALJ failed to properly address the treating source opinions in determining Plaintiff’s RFC.  The court has already concluded that this case must be remanded for the ALJ to properly consider Dr. Heiner’s and Dr. Gagon’s opinions.  Based on the court’s earlier conclusion that the ALJ failed to properly consider these two doctor’s opinions, the court also concludes that the ALJ

32

failed to properly consider their opinions in determining Plaintiff's RFC, as required by law.  *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.  Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight.")

Finally, the court examines Plaintiff's argument that the ALJ failed to support his RFC assessment by citing to the medical record.  The ALJ explained his RFC determination as follows

> In reaching this conclusion, the ALJ has considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process.  Based on new medical evidence and testimony, the ALJ finds that prior to the date last insured, the claimant retained the residual functional capacity for medium unskilled work (20 CFR § 404.1527(f) and Social Security Ruling 96-6p).

(Tr. 26.)  This short explanation of the ALJ's RFC determination reveals that the ALJ relied on the non-examining State Agency medical consultants who evaluated Plaintiff's application at the initial and reconsideration levels of the administrative review process and "new medical evidence and testimony," without revealing exactly what evidence and testimony was relied upon.

Social Security Ruling 96-8p requires an ALJ's RFC assessment to include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  1996 WL 374184, at *7.  The ALJ did discuss the medical record, including Plaintiff's treating source opinions, to some extent; however, as explained above, that discussion was flawed.  In addition, the ALJ did discuss Plaintiff's testimony and found it was not credible.  Thus, the ALJ did discuss this information, to some extent, earlier in his decision.  However, he failed to sufficiently indicate what specific medical evidence he relied upon in concluding that Plaintiff could perform medium unskilled work.  The court has been unable to determine what medical evidence the ALJ was referring to when he indicated that he relied on new medical evidence and testimony in concluding that Plaintiff could perform medium work.

The court notes that the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  SSR 96-8p, 1996 WL 374184, at *5.  To properly evaluate a claimant's RFC, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel.  *See Thompson*, 987 F.2d at 1492.  On remand, the court advises the ALJ to ensure that the record contains the necessary evidence to properly evaluate Plaintiff's RFC.  If the record

34

does not contain sufficient evidence, the ALJ must recontact Plaintiff's treating physicians to obtain sufficient evidence. *See* 20 C.F.R. § 404.1512(e); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

In conclusion, the ALJ's RFC determination was deficient in several significant ways. First, the ALJ ignored the VE's testimony that limitations on significant bending, stooping, and squatting, and working around dangerous unprotected heights, machinery, or chemicals, would not allow for any medium work. Second, the ALJ failed to properly consider Dr. Heiner and Dr. Gagon's opinions in determining Plaintiff's RFC. Finally, the ALJ did not sufficiently specify what medical evidence he was basing his RFC determination upon. Upon remand, the ALJ must remedy these deficiencies with a complete and specific explanation linking his RFC determination to the evidence of record, including but not limited to Plaintiff's medical records, Plaintiff's treating physicians' opinions, and the VE's testimony.

## RECOMMENDATION

Based on the above analysis, **IT IS RECOMMENDED** that Plaintiff's request for the court to reverse or remand the Commissioner's decision be **GRANTED**. Upon remand, the ALJ must:

1. Assess Dr. Heiner's medical source statement. The ALJ must then adequately articulate acceptable reasons for his treatment of Dr. Heiner's medical source statement.

2.  Assess Dr. Gagon's medical source statement and adequately articulate his specific reasons for accepting or rejecting Dr. Gagon's opinions.

3.  Reassess Plaintiff's RFC.  In doing so, the ALJ must reexamine the VE's testimony regarding how limitations on significant bending, stooping, and squatting, as well as working around dangerous unprotected heights, machinery, or chemicals, would not allow for any unskilled medium work; properly consider the opinions of Dr. Heiner and Dr. Gagon; and sufficiently specify upon what medical evidence he is basing his RFC determination.  In addition, the ALJ may find it necessary to obtain additional evidence, such as a medical advisor opinion, to properly determine Plaintiff's RFC.

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b),

within ten (10) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 23rd day of August, 2007.

BY THE COURT:

Samuel Alba
United States Chief Magistrate Judge